# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

|  |  |
|---|---|
| **Decapolis Systems, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**Universal Software Solutions, Inc.,**<br><br>Defendant | **Case No. 6:21-cv-**0656<br><br>**Jury Trial Demanded** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Decapolis Systems, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Universal Software Solutions ("VeraSuite" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.  Decapolis Systems, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at: Decapolis Systems, LLC, 600 S. Dixie Hwy, #605, West Palm Beach, Florida 33401.

2.  Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 10601 Pecan Park Boulevard, Suite 401, Austin, Texas 78750.  On information and belief, Defendant forfeited its existence in the State of Texas although maintaining business in Texas, but may be served through its registered agent in the State of Texas: Darius M. Samani at 10601 Pecan Park Boulevard, Suite 401, Austin, Texas 78750.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

4.      This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and elsewhere in the State of Texas and has appointed an agent for service of process in Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of Decapolis' Patents in this District and elsewhere in the State of Texas.

5.      Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages; the provision and support of physician networks; the provision and support of customer accounts; and further including maintaining physical facilities) its services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.  On information and belief, Defendant is a provider of: (i) health services, (ii) billing services; (iii) physician and hospital account services; and/or (iv) patient records in electronic format, throughout the United States.

6.      On information and belief and as shown in Figure 1, Defendant maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    2



**Figure 1 – Screenshot of Defendant's website for contact located in Austin, Texas as visited on June 13, 2021 and located at https://www.versasuite.com/contact/demo-request/.**

7.      Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).   As noted above, Defendant maintains a regular and established business presence in this District.

## PATENTS-IN-SUIT

8.      Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patents 7,464,040 and 7,490,048 (hereinafter collectively referred to as "the Decapolis Patents").

9.      By written instruments duly filed with the United States Patent and Trademark Office, Decapolis is assigned all rights, title, and interest in the Decapolis Patents.   *Id.* Such Assignments are recorded in the records of the United States Patent and Trademark Office at Reel 055516 and Frame 0027.   As such, Plaintiff Decapolis Systems, LLC has sole and exclusive standing to assert the Decapolis Patents and to bring these causes of action.

10.     The Decapolis Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

11.     Raymond A. Joao is the sole named inventor for the Decapolis Patents.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                3

12.     Mr. Joao is a pioneering inventor. The Decapolis Patents represent substantial technological advancements in the medical billing services industry, which were unconventional at the time of invention.  Indeed, the Decapolis Patents have been back-cited in patents issued to well-known industry leaders, including: IBM, Siemens AG, Walgreens, McKesson, and Sony.

13.     Additional companies have benefited from, and been provided notice through, their back-citations to the Decapolis Patents, including: Atirix Medical Systems, Inc.; IBM Corp.; Bard Peripheral Vascular, Inc.; General Electric Company; C.R. Bard, Inc.; Healthunity Corp., Epic Systems Corp.; Accelere, Inc.; Align Technology, Inc.; Siemens Aktiengesellschaft; Vital Data Technology, LLC; Hospira, Inc.; Medical Present Value, Inc.; PSYWARE GmbH; ICU Medical, Inc.; Elwha LLC; Advanced Healthcare Systems, Inc.; Quality Standards, LLC; Therap Services, LLC; and Devicor Medical Products, Inc.

14.     The Decapolis Patents each include numerous claims defining distinct inventions.  No single claim is representative of any other.

15.     The priority date of each of the Decapolis Patents is at least as early as December 12, 1999. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Decapolis Patents overcame a number of specific technological problems in the industry, and provided specific technological solutions.

16.     By way of example, as of the date of invention, "Doctors or providers may base their diagnoses and/or treatments, [relying on] patients who usually supply this information on questionnaires or forms just prior to seeing the healthcare provider and/or during a preliminary interview with the provider."  *See* U.S. Patent No. 7,464,040, Col. 1, ll. 52-6.  As a result, the "information obtained from these questionnaires or forms, as well as from these preliminary interviews with the providers, may not necessarily result in sufficient,

comprehensive, and/or accurate, information being obtained regarding the patient." *Id.*, Col.1, ll. 56-60.  Further, as of the date of invention: "there is no guarantee that the same [patient medical history] information will be provided, in a uniform manner, to a next or different provider. As a result, patient information may not be uniformly distributed and/or be available to providers at the point of treatment and/or otherwise." *Id.*  "Another problem which exists in the current healthcare system is that doctors or other providers do not always have the latest information and/or research material available to them prior to, and/or during, the diagnosis and/or treatment process." *Id*., Col. 1, ll. 60-5.

17.     Further, at the time of the invention, it had "been estimated that between 44,000 and 98,000 individuals die in the United States alone, as the result of errors or mistakes made by doctors, healthcare providers, and/or healthcare facility workers. There is no doubt that many of these deaths result from inaccurate and/or erroneous information and/or the lack of the availability of correct and/or up-to-date information." *Id.*, Col. 1, ll. 43-49.

18.     The Decapolis Patents overcame these technological problems by a method or apparatus wherein a "medical doctor will transmit [a] final diagnosis and treatment plan…to [a] central processing computer" and wherein "the central processing computer [sic] will then update the patient's records in the database [sic] so as to include all of the data and information described as being processed and/or generated by the central processing computer [sic], including, but not limited to the patient's symptoms, if any, the examination findings, the information contained in the diagnostic report and the treatment report, the final diagnosis and the prescribed treatment. Thereafter, operation [sic] will cease [sic]. The patient's records will then be updated and be available for the patient's next treatment and/or diagnosis." *Id*., Cols. 28, ll. 66-7 and Col. 29, ll. 10-2.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    5

19.   The claims of the Decapolis Patents are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Decapolis Patents over extensive prior art as disclosed and of record during the prosecution of the Decapolis Patents.  *See Stone Basket Innov. v. Cook Medical,* 892 F.3d 1175, 1179 (Fed. Cir. 2018) ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

20.   Moreover, any arguments relating to eligibility as may be made by Defendant here are necessarily merely cumulative with those already considered, and rejected, by the Patent Examiners in allowing the Decapolis Patents.  *See, e.g., Technology Licensing Corp. v. Videotek, Inc.,* 545 F.3d 1316, 1337 (Fed. Cir. 2008); *Stone Basket,* 892 F.3d at 1179.

21.   As further evidence of the unconventionality of the technological solutions captured in the claims of the Decapolis Patents as of 1999, the United States of America, Department of the Army even cites to the Decapolis Patents.

22.   As noted, the claims of the Asserted Patent Claims have priority to at least December 18, 1999.

23.   The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    6

24.     Further, the claims of the Asserted Patents contain inventive concepts.  Even if a court ruled the underlying aspects to be abstract, the inventive concepts disclosed in sufficient detail would transform the claims into patent-eligible subject matter.

25.     The claims of the Decapolis Patents were investigated by the Patent Examiners in fields exactly relevant to the patented inventions.

26.     More specifically, the Patent Examiners performed for patent eligibility, including novelty, an analysis of the claims of the Decapolis Patents in at least the 600/300 (Diagnostic Testing), 705/2-4 (Health care management; Healthcare record management; and Patient record management), and 715/530 (Data Processing)

27.     As further evidence of the inventive nature of the inventions claimed in the Decapolis Patents, the Decapolis Patents each had at least 135 citations before being issued as valid and enforceable patents.

28.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Decapolis Patents to issue.  In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims.  *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

29.     The claims of the Decapolis Patents are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art.  *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of

record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008).  Likewise, the claims of the Decapolis Patents are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners.  *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

30.   The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286.") (internal citations omitted).

## THE ACCUSED INSTRUMENTALITIES

31.   Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides a plurality of systems, platforms and services, including but not limited to:

i.   VeraSuite: On information and belief, the VeraSuite platform and solution is an electronic health records ("EHR") and practice management system and software for healthcare providers and their patients, payers, health registries, and insurers. "VersaSuite is ONE product, build on ONE Framework, running on ONE Database, and is designed and built by ONE Development Team in Austin, TX USA." (*See* https://www.versasuite.com/.)  VeraSuite offers, among other things, ONE database and framework to receive and send data and messages, fill orders, manage patient care, referrals, admissions, scheduling, check-in, e-prescriptions, discharge, billing, accounting, collections, security, payroll, materials management, practice analytics, revenue management, and reporting.  A video describing the VeraSuite platform and solution can also be found at https://www.versasuite.com/.  It includes features as shown below in Figures 2 and 3.



Figure 2 – Screenshot of Defendant's webpage for VeraSuite as visited on June 13, 2021 and located at https://www.versasuite.com/electronic-health-records-software.



Figure 3 – Screenshot of Defendant's webpage for VeraSuite as visited on June 13, 2021 and located at https://www.versasuite.com/modules/epm-enterprise-practice-management/.

iii. And all augmentations to these named VeraSuite platforms or descriptions of platforms.

Collectively, all of the foregoing are referred to herein as the "Accused instrumentalities."

## COUNT I
## Infringement of U.S. Patent No. 7,490,048

32.    Plaintiff incorporates the above paragraphs by reference.

33.    Defendant has been on actual notice of the '048 Patent at least as early as the date it received

service of the Original Complaint in this litigation.

34.     The damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

35.     Upon information and belief, Defendant owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

36.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claims 1, 2, 10, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, and 40 of the '048 Patent.   As exemplary, Claim 20 is by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.   Defendant directly makes the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.   More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendant: (i) executed contracts with third party servicers for the provision of archival services and databases for healthcare and related records and/or designed and assembled such archival services and databases using its own employees and/or contractors; (ii) developed, owns, and maintains digital storage archives for healthcare and related records; (iii) provides access to such records via its own branded Internet domains and/or software applications using its own name and business trade dress; (iv) exercises authority over the provision of such record archival services and databases; (v) openly advertises and promotes such record archival services and databases bearing its name and business trade dress to customers in the United States; (vi) authored or commissioned the preparation of computer code for accessing and retrieving stored and/or archived healthcare records via its Internet domain web pages and/or software applications; (vii) claims

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                        11

ownership and control over such stored and/or archived healthcare records by virtue of its corporate branding and the provision of direct access; and (viii) receives monetary benefits from the provision of such healthcare records storage, archival, and retrieval services to customers.

37.     Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces. Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner. Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

38.     More specifically, and on information and belief, Defendant is making, using, and offering for sale a computer-implemented method, identified as the Accused Instrumentalities, comprising: receiving information regarding a restriction or limitation regarding an ability of a person or an entity to at least one of access, obtain, change, alter, and modify, information contained in an individuals or patients healthcare record or an individual's or patients healthcare file, wherein the individuals or patient's healthcare record or the individuals or patient's healthcare file contains healthcare information or healthcare-related information personal to the individual or patient.

39.     As the video and Figures 3-7 show above, Defendant is making, using, and offering for sale a computer-implemented method and apparatus, identified as the Accused Instrumentalities.

40.     Additionally, the Accused Instrumentalities are specially configured such that they perform a method wherein the restriction or limitation contains information regarding at least one of a healthcare provider, a healthcare payer, a healthcare insurer, and an authorized entity, and information regarding a designated purpose for allowing each of the at least one of a healthcare provider, a healthcare payer, a healthcare insurer, and an authorized entity, to at least one of access, obtain, change, alter, and modify, the information contained in an individuals or patients healthcare record or an individual's or patient's healthcare file, wherein the designated purpose is at least one of to perform a diagnosis, to perform a diagnosis for a certain ailment, illness, or symptom, to provide a second opinion, to verify or disprove a condition or a pre-existing condition, to submit an insurance claim, and to process an insurance claim.

41.     Defendant's infringing methods each separately, are storing the information regarding a restriction or limitation regarding an ability of a person or an entity to at least one of access, obtain, change, alter, and modify, the information contained in an individuals or patient's healthcare record or an individual's or patient's healthcare file; processing, with a processor, a request by a person or an entity to at least one of access, obtain, change, alter, and modify, the information contained in an individuals or patient's healthcare record or an individual's or patient's healthcare file; determining, using the information regarding the restriction or limitation, whether the person or the entity is allowed or authorized to at least one of access, obtain, change, alter, and modify, the information contained in an individual's or patient's healthcare record or an individuals or patient's healthcare file; generating a message

containing at least one of information regarding the person or the entity making the request, and identification information regarding the person or the entity making the request, and further wherein the message contains an actual change, alteration, or modification, made to the information contained in an individual's or patients healthcare record or an individuals or patient's healthcare file; and transmitting the message to a communication device of the individual or patient via, on, or over, a communication network.

42.     Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities that includes wherein the message is transmitted to the communication device of the individual or patient at least one of during, concurrently with, at a same time as, and prior to a completion of an at least one of an accessing, an obtaining, a changing, an altering, and a modifying, of the information contained in an individuals or patient's healthcare record or an individual's or patients healthcare file by the person or the entity, or at least one of during, concurrently with, at a same time as, and prior to a completion of a processing of the request to at least one of access, obtain, change, alter, and modify, the information contained in an individuals or patient's healthcare record or an individual's or patient's health care file.

43.     On information and belief, the infringement of the Decapolis Patents by Defendant will now been willful through the filing and service of this Complaint.

44.     In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '048 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services

for use in systems that fall within the scope of at least Claims 1, 2, 10, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, and 40 of the '048 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Decapolis and is thus liable to Decapolis for infringement of the '048 Patent under 35 U.S.C. § 271.

45.    Now with knowledge of the Decapolis Patents, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

46.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

47.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                              15

infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

48.   In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

49.   The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the Decapolis Patents.

50.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT II**
**Infringement of U.S. Patent No. 7,464,040**

51.   Plaintiff incorporates the above paragraphs by reference.

52.   Defendant has been on actual notice of the '040 Patent at least as early as the date it received service of the Original Complaint in this litigation.

53.   The infringement damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

54.   The '040 patent application claims the benefit of priority of U.S. Provisional Patent Application Ser. No. 60/286,422, filed April 25, 2001, titled "APPARATUS AND METHOD FOR PROCESSING AND/OR FOR PROVIDING HEALTH CARE

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    16

INFORMATION AND/OR HEALTHCARE-RELATED INFORMATION," the subject matter and teachings of which are hereby incorporated by reference herein.

55.     Upon information and belief, Defendant owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

56.     Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claims 1 and 46 of the '040 Patent by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities. Defendant directly makes the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom. More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendant: (i) executed contracts with third party servicers for the provision of archival services and databases for healthcare and related records and/or designed and assembled such archival services and databases using its own employees and/or contractors; (ii) developed, owns, and maintains digital storage archives for healthcare and related records; (iii) provides access to such records via its own branded Internet domains and/or software applications using its own name and business trade dress; (iv) exercises authority over the provision of such record archival services and databases; (v) openly advertises and promotes such record archival services and databases bearing its name and business trade dress to customers in the United States; (vi) authored or commissioned the preparation of computer code for accessing and retrieving stored and/or archived healthcare records via its Internet domain web pages and/or software applications; (vii) claims ownership and control over such stored and/or archived healthcare records by virtue of its

corporate branding and the provision of direct access; and (viii) receives monetary benefits from the provision of such healthcare records storage, archival, and retrieval services to customers.

57.     Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

58.     More specifically, and on information and belief, the Accused Instrumentalities, each separately, receives information regarding an individual, wherein the information regarding an individual is transmitted from a first computer or from a first communication device, wherein the first computer or the first communication device is associated with a healthcare provider, wherein the information regarding an individual is transmitted via, on, or over, at least one of the Internet and the World Wide Web, wherein the information regarding an individual contains information regarding at least one of a symptom, an examination finding, a diagnosis, a treatment, an administration of a treatment, and a procedure; a database or a memory device, wherein the database or the memory device is associated with the receiver and is located at a location remote from the first computer or remote from the first

communication device, wherein the database or the memory device stores information regarding a plurality of individuals, a plurality of healthcare providers, and a plurality of healthcare insurers or healthcare payers.

59.     The Accused Instrumentalities each separately, use the information regarding a plurality of individuals, a plurality of healthcare providers, and/or a plurality of healthcare insurers or healthcare payers, which includes a healthcare record or a healthcare history of, for, or associated with, each individual of a plurality of individuals, along with a healthcare record or a healthcare history of, for, or associated with, the individual, information regarding a healthcare practice of, and an insurance accepted by, each of the plurality of healthcare providers, including information regarding a healthcare practice of, and an insurance accepted by, the healthcare provider, information for processing or for storing information regarding a healthcare diagnosis or a healthcare treatment, and information for submitting an insurance claim to a healthcare insurer or a healthcare payer associated with the individual.

60.     Upon information and belief, Defendant owns, directs, and/or controls the operation of the Accused Instrumentalities that includes a processing device, wherein the processing device processes the information regarding an individual, and further wherein the processing device processes information for at least one of storing the information regarding an individual in the database or the memory device and updating the healthcare record or the healthcare history of, for, or associated with, the individual, and further wherein the processing device automatically generates an insurance claim in response to the storing of the information regarding an individual in the database or the memory device or the updating of the healthcare record or the healthcare history of, for, or associated with, the individual, wherein the insurance claim is suitable for being automatically submitted to the healthcare insurer or

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

the healthcare payer associated with the individual or is suitable for being automatically transmitted to a second computer or to a second communication device, wherein the second computer or the second communication device is associated with the healthcare insurer or the healthcare payer associated with the individual, and further wherein the processing device transmits the insurance claim to the second computer or to the second communication device.

61.   As the video and Figures 3-7 show above, Defendant is making, using, and offering for sale a computer-implemented method and apparatus, identified as the Accused Instrumentalities.

62.   On information and belief, the infringement of the Decapolis Patents by Defendant is now willful and continues to be willful through the filing and service of this Complaint.

63.   In addition or in the alternative, now with knowledge of the Decapolis Patents, Defendant induces direct infringement by others and/or contributing to the infringement by others of the '040 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of at least Claims 1 and 46 of the '040 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Decapolis and is thus liable to Decapolis for infringement of the '040 Patent under 35 U.S.C. § 271.

64.   Defendant now actively induces infringement under Title 35 U.S.C. § 271(b).  Defendant's actions induce infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct

infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

65.     Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

66.     If Defendant continues these actions as of this Complaint, Defendant will have taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

67.     In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

68.     The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                          21

infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the Decapolis Patents.

69.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Decapolis Systems, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.     Declaring that Defendant has infringed each of the Asserted Patents;

2.     Awarding Decapolis Systems, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.     Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of one or more of the Decapolis Patents;

4.     Awarding Decapolis Systems, LLC its costs, reasonable attorneys' fees, expenses, and interest; and

5.     Granting Decapolis Systems, LLC such further relief as the Court finds appropriate.

## JURY DEMAND

Decapolis Systems, LLC demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Randall Garteiser*
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   California Bar No. 239829
   rgarteiser@ghiplaw.com
René Vazquez
   Virginia Bar No. 41988
   rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**
**DECAPOLIS SYSTEMS, LLC**

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT